

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | |
|---|---|---|
| Rod J. Rosenstein<br>United States Attorney<br><br>Paul E. Budlow<br>Assistant United States Attorney | 36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 | DIRECT: 410-209-4917<br>MAIN: 410-209-4800<br>FAX: 410-962-3091<br>TTY/TDD: 410-962-4462<br>Paul.Budlow@usdoj.gov |

September 13, 2012

Alan Winik
18 W. Church Street
Frederick, MD 21701

RDB-12-590

Re: United States v. James Andrew Wagner, Criminal No.: (to be assigned)

Dear Mr. Winik:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by September 28, 2012, at 5:00 pm, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to waive indictment and plead guilty pursuant to an Information charging him with Possession of Child Pornography, in violation of 18 U.S.C. §§2252(a)(4)(B) and (b)(2). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a. That on or about December 22, 2011, in Maryland, the Defendant knowingly possessed and accessed a visual depiction with intent to view;

    b. That the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported

in or affecting interstate or foreign commerce;

    c. That the visual depiction was of one or more minors engaged in sexually explicit conduct; and

    d. That the Defendant knew of the sexually explicit nature of the material and that the visual depictions were of actual minors engaged in that sexually explicit conduct.

## Penalties

  3. (a) The maximum sentence provided by statute for the offense to which your client is pleading guilty is not more than (10) years, followed by a term of supervised release of not more than life and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

    (b) The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

  4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

b. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

e. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

f. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

h. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from

the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

    a. The base offense level is eighteen (18) pursuant to U.S.S.G. § 2G2.2(a)(1).

    b. Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the depictions involved prepubescent minors or minors under the age of twelve (12). (Subtotal = 20).

    c. Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the offense involved the use of a computer. (Subtotal = 22).

    d. Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a five (5) level increase because the offense involved more than 600 images. (Subtotal = 27).

    e. Pursuant to U.S.S.G. §2G2.2(b)(3)(F), there is a two (2) level increase because the offense involved distribution. (Subtotal = 29).

7. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies

4

involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

8. Thus, the final anticipated base offense level is 26.

9. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

10. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11 (c) (1) (C) Plea

11. The parties stipulate and agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of this case: **a sentence no less than forty-eight (48) months of incarceration and no more than ninety-six (96) months of incarceration.** For the purposes of this agreement, incarceration is a sentence to the Bureau of Prisons, and does not include any form of home confinement or other substitute for incarceration. This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

### Obligations of the United States Attorney's Office

12. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Restitution

13. For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C.

5

§§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Forfeiture

14. Your client agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on December 22, 2011. He further agrees to take whatever steps are necessary to pass clear title to the property to the United States or any State authority. Those items include, but are not limited to:

   a. HP Media Center M1000, s/n: MXK43315L6l;
   b. HP Pavilion 9800, s/n: US10550290;
   c. HP Desktop, s/n: U92064914;
   d. Packard Bell Computer, s/n: N560011555;
   e. HP Media Center PC, s/n: MXF7510L05;
   f. HP PhotoSmart C7250 All In One Printer, s/n: MY77G221ZV;
   g. HP Laptop, s/n: TW01709267;
   h. 52 Floppy disks;
   i. 500GB External Hard Drive, model# HD5000S, s/n: CNU80500HK;
   j. Western Digital External Hard Drive, s/n: WCAV5K796144;
   k. Western Digital External hard Drive, s/n: WCATRG827370;
   l. HP External Hard Drive, s/n: CNU54903J4;
   m. Iomega External Hard Drive, s/n: 97A9361D5A;
   n. 3 thumb drives;
   o. Several VHS tapes;
   p. 131 CDs/DVDs; and
   q. Numerous printed photographs and documents.

### Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

      a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

      b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

      c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

      d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

16.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

17.     The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what

guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Agreement Does Not Cover Production of Child Pornography
## Or Sexual Activity with a Minor

18. The parties agree and understand that this plea agreement is being entered into prior to a full and complete forensic examination of the Defendant's computer(s) and other electronic media. Should such examination result in evidence that the Defendant was involved in the production of child pornography or any sexual activity with a child, this Agreement would not prevent the United States in any way from prosecuting said offenses.

## Entire Agreement

19. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9 Nov 12
Date

James Andrew Wagner

I am James Andrew Wagner's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9 Nov. 12
Date

Alan Winik, Esquire

## EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

James Andrew Wagner ("WAGNER") age 43, resides in Hagerstown, Maryland. WAGNER is a regular user of a publicly available peer-to-peer (P2P) file sharing network, with the username "undead69." WAGNER retired from active duty in the United States Air Force in 1992. From 1998 through the date of this offense, WAGNER was a civilian police officer at Fort Detrick. As detailed below, WAGNER has been involved in the collecting and sharing of child pornography.

On April 7, 2011, a Task Force Officer in the FBI Kansas City Field Office used a computer connected to the internet and launched a publicly available P2P file sharing program. While working in an undercover capacity, the agent queried his network of "friends" and observed the user "undead69" was logged in. Undead69 was located at 11808 Jasmine Court, Hagerstown, Maryland and was sharing child pornography files. The officer browsed through undead69's content in thumbnail view and observed child pornography images with titles indicative of child pornography. The agent downloaded 16 images from undead69's shared files. A review of the images revealed that all 16 image files contained visual depictions of minors engaging in sexually explicit conduct and are child pornography. In one image, the title of which is "20091004081256-lihbhbdxwreehjqwz.jpg," a minor male is performing oral sex on an adult male.

On November 28, 2011, a Special Agent in the Baltimore FBI Field Office used a computer connected to the internet and launched a publicly available P2P file sharing program. While working in an undercover capacity, the agent queried her network of "friends" and observed the user "undead69" was logged in. Undead69 was located at 11808 Jasmine Court, Hagerstown, Maryland and was sharing child pornography files. The agent downloaded 62 images and 3 videos from undead69's shared files. At least 55 image files and 3 video files contained visual depictions of minors engaging in sexually explicit conduct and are child pornography. One video is approximately two minutes in length and is titled "!! 05.07 !! Jenny - enjoying sucking cock, says dog cock is good but daddys is better.avi." The video depicts a naked prepubescent female performing oral sex on an adult male.

WAGNER was the sole user of undead69, and was the user on April 7, 2011 and November 28, 2011. WAGNER lived alone at 11808 Jasmine Court, Hagerstown, Maryland.

On December 22, 2011, the FBI executed a warrant at WAGNER's home at 11808 Jasmine Court, Hagerstown, Maryland. Seized during the search warrant were the following items, among others:

a. HP Media Center M1000, s/n: MXK43315L6l;
b. HP Pavilion 9800, s/n: US10550290;
c. HP Desktop, s/n: U92064914;
d. Packard Bell Computer, s/n: N560011555;
e. HP Media Center PC, s/n: MXF7510L05;
f. HP PhotoSmart C7250 All In One Printer, s/n: MY77G221ZV;
g. HP Laptop, s/n: TW01709267;
h. 52 Floppy disks;
i. 500GB External Hard Drive, model# HD5000S, s/n: CNU80500HK;
j. Western Digital External Hard Drive, s/n: WCAV5K796144;
k. Western Digital External hard Drive, s/n: WCATRG827370;
l. HP External Hard Drive, s/n: CNU54903J4;
m. Iomega External Hard Drive, s/n: 97A9361D5A;
n. 3 thumb drives;
o. Several VHS tapes;
p. 131 CDs/DVDs; and
q. Numerous printed photographs and documents.

WAGNER was at home at the time of the execution of the warrant and he voluntarily agreed to be interviewed by investigators. WAGNER admitted that he is the sole user of the undead69 account, and that he understood that the P2P file sharing program was configured to allow him access to other user's files, and to allow other users that were his friends to access and download his shared files. WAGNER stated that he was on the P2P file sharing program about twice each week, and that he usually kept the program running in the background even when he is not using the program. WAGNER further stated that he has an online persona named "Francine Victoria," and that he has had that online persona for approximately two years.

Located in a safe in WAGNER's home were printed photographs, including photographs of a naked male. WAGNER viewed one of the photographs of the male and stated that he met the male in the photograph online, that he believed the male was 17 years old, that the male sent the nude photographs in response to WAGNER's request, and that he had masturbated to the photos in the past. WAGNER stated that he never sent any photos of himself to the male, and that he never met the male in person.

A review of the images on WAGNER's computers and other devices revealed numerous images and videos, including far greater than 600 files that are visual depictions of minors engaged in sexually explicit conduct. The image and video files were separated into hundreds of folders, organized by the name of the minor depicted in the files.

      I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

\_\_7 Nov 12\_\_                   \_\_\_\_*/s/ James A Wagner*\_\_\_\_
Date                                  James Andrew Wagner